UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JOSEPH E. JEMIOLO,

    Plaintiff,

    v.      CAUSE NO.: 3:18-CV-1016-JD-MGG

HYATT, et al.,

    Defendants.

OPINION AND ORDER

Joseph E. Jemiolo, a prisoner without a lawyer, filed a complaint in the Southern District of Indiana alleging that he is a terminally ill cancer patient residing at the Miami Correctional Facility, that he was injured when an officer hit his back and he fell down a set of stairs, and that he has been denied adequate medical care for both the injuries sustained as a result of the fall and pain resulting from his cancer. He has sued the State of Indiana, Wexford Medical, Commissioner Robert E. Carter, Superintendent Hyatt, Lieutenant Kinnager, CO Houston, CO Renow, DON Bobby, RN Jenifer Auston, Dr. Marandet, RN Vernia Fanning, Head of Medical Lynn Fry, Regional Director Leann Ivers.  A filing by an unrepresented party "is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is

frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Jemiolo was transferred to the Miami Correctional Facility in 2016 because of his medical needs stemming from terminal cancer. Because he is weak from the cancer and chemotherapy, walking is difficult for him. Due to his cancer, he has many medical appointments outside the facility, and he has asked that he be permitted to use a wheelchair for those appointments. Lynn Fry, the head of nursing, has refused his request because he will not sign a do not resuscitate order (DNR). According to Jemiolo, Nurse Fry told him that "if [he] signed the DNR, she would make it to where [he] wouldn't feel any pain, but since [he] refused to sign she said [he] would hurt very bad till [he] die[s]."

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer*, 511 U.S. at 834. A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the subjective prong, the plaintiff must establish that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could

have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

Jemiolo has alleged that a wheelchair is medically necessary for outside medical appointments due to weakness, pain, and difficulty walking, and his request to use a wheelchair for these visits has been denied. It can be inferred from Nurse Fry's comment that she is being deliberately indifferent to Jemiolo's pain and, more specifically, his need to use a wheelchair for outside visits. This states a claim, and Jemiolo will be permitted to proceed against Head of Medical Lynn Fry in her official capacity for injunctive relief and in her individual capacity for monetary damages on this claim.

On April 14, 2018, Jemiolo had an outside appointment with a cardiologist. He had just had chemotherapy a couple days earlier and he was weak. CO Houston and CO Renow took him to his appointment. On the way there, because he could not stand well and it was taking time to chain his legs, he was told to put his knees in the chair and was chained in that manner. He was uncomfortable and expressed a desire to use a wheelchair, but the vehicle that was available would not accommodate a wheelchair. Following his appointment, he needed to walk down five stairs. As he began to go down the stairs, CO Houston reached to grab the chain, but he missed and instead hit

3

Jemiolo's back. Jemiolo fell down the five concrete stars face first. As a result of the fall, he was bleeding from his nose, lips, face, and elbows and his eyes were swelling and bruising. He alleges that he suffered both a broken nose and a concussion from the fall.

It is unclear if Jemiolo is alleging that the officer used excessive force when exiting the doctor's office, but, if so, he has not stated a claim. The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* Here, Jemiolo does not allege that the officer caused him to fall on purpose, but that the officer missed when reaching for the chain and inadvertently hit his back. As alleged, Jemiolo has not alleged that the officer was acting maliciously and sadistically to cause harm, but rather that he inadvertently caused Jemiolo harm. This does not state a claim for excessive force.

A nurse from the physician's office saw Jemiolo after the fall and there was so much blood she thought he had been shot. She told the officers that they needed to take him to the hospital. CO Houston and CO Renow called Lieutenant Kinnager, and after consulting with someone in the medical department, Lieutenant Kinnager instructed CO Houston and CO Renow to return Jemiolo to the prison instead of taking him to the hospital. When they arrived at the prison, Jemiolo had to be taken to the infirmary in a wheelchair. Non-medical staff rely on medical experts and are "entitled to relegate to

4

the prison's medical staff the provision of good medical care." *Burks v. Raemisch*, 555 F.3d 592, 595, (7th Cir. 2009). Here, the decision on whether Jemiolo needed to be taken to the hospital was made by medical staff, not CO Houston, CO Renow, or Lieutenant Kinnager. Because it was not deliberately indifferent for them to follow the directive of medical staff and return Jemiolo to the prison for further assessment of his injuries, this does not state a claim. However, if Jemiolo determines the identity of the member of the medical department that determined that he should be returned to the prison instead of being taken to the hospital, he may seek leave to file an amended complaint to include that individual.

Upon his return to the prison, Nurse Auston, Nurse Fanning, Nurse Ivers, Nurse Fry, DON Bobby, CO Houston, CO Renow, and Lieutenant Kinnager were taking pictures of Jemiolo's injuries and laughing. Nurse Fanning gave Jemiolo ice, but nobody did anything to stop the bleeding. Taking Jemiolo's allegation as true, providing only ice in light of his serious injuries and bleeding demonstrates deliberate indifference. Even an individual without a medical background would know that ice was inadequate treatment for Jemiolo's injuries. This states a claim, and Jemiolo may proceed against each of these defendants in their individual capacity for damages.

Following his return to the prison, Nurse Fanning told Nurse Auston, Nurse Fry, and Dr. Marandet that she thought that Jemiolo was on too much pain medication because he could not keep his head up. In response, Dr. Marandet cut Jemiolo's pain medication in half even though he needed the medication for the pain associated with cancer. Lynn Fry then reminded Jemiolo about the DNR form and smiled. Although

5

Jemiolo's pain medications have been returned to the previous levels, he is regularly reminded of the DNR form.[1] In light of his terminal cancer diagnosis and the events surrounding the incident – including laughing while taking pictures of Jemiolo's injuries and referencing the DNR form - these facts suggest that Nurse Fanning, Dr. Marandet, and Nurse Fry were each deliberate indifference to Jemiolo's pain, and he will be permitted to proceed against them in their individual capacities for monetary damages. Nurse Austin was present, but she did not otherwise participate in the decision to reduce Jemiolo's pain medication, so Jemiolo has not stated a claim against her.

Shortly after the April 14, 2018, incident, Jemiolo asked for a grievance form and was denied. He asked about the pictures and they responded by asking what pictures and laughing. But, a prisoner has no due process rights with respect to the prison grievance procedures, and that an official ignores, mishandles, or denies a prisoner's grievances does not state a claim under § 1983. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation.") (citations omitted). This does not state a claim.

He has sued Superintendent Hyatt and Commissioner Carter alleging that they know of his medical needs and could order that he not be required to wear leg

---

[1] While Nurse Fry's repeated comments to Jemiolo regarding signing the DNR, if true, are despicable, Jemiolo has not alleged that his current treatment for pain is inadequate outside of the need for a wheelchair when traveling to and from his outside medical appointments. However, in light of Nurse Fry's behavior, if Jemiolo finds that his pain is not adequately managed as this case progresses, he is invited to file an amended complaint raising that claim.

6

restraints because he is so weak from chemotherapy and has trouble walking. While Superintendent Hyatt and Commissioner Carter may know of his medical condition, Jemiolo has not alleged that he asked them or anyone else whether, in light of his medical condition, leg restraints can be left off. A lawsuit against an individual pursuant to § 1983 requires "personal involvement in the alleged constitutional deprivation to support a viable claim." *Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003). He has not alleged that either Superintendent Hyatt or Commissioner Carter were personally involved in the decision that he should wear leg restraints despite his injury. Furthermore, there is no general *respondeat superior* liability under 42 U.S.C. § 1983, and these individuals cannot be held liable simply because they oversee operations at the prison or supervises other correctional officers. *See Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). However, Jemiolo will be permitted to proceed against Superintendent Hyatt in his official capacity for injunctive relief to address his pain during transport to medical visits outside the facility in a manner that complies with the Eighth Amendment, because Superintendent Hyatt is charged with ensuring Jemiolo receives adequate medical care.

Jemiolo has also named the State of Indiana as a defendant. However, the Eleventh Amendment generally precludes a citizen from suing a State or one of its agencies or departments in federal court. *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001). There are three exceptions to Eleventh Amendment immunity: (1) suits directly against the State based on a cause of action where Congress has abrogated the state's immunity from suit; (2) suits directly against the State if the State waived its sovereign

immunity; and (3) suits against a State official seeking prospective equitable relief for ongoing violations of federal law. *MCI Telecommunications Corp. v. Ill. Commerce Comm'n*, 183 F.3d 558, 563 (7th Cir. 1999). None of these exceptions apply here. Congress did not abrogate the States' immunity through the enactment of Section 1983. *Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005). Indiana has not consented to this lawsuit. Therefore, the State of Indiana must be dismissed.

Similarly, Jemiolo has named Wexford Medical as a defendant. Wexford is the private company which provides medical care at the prison. Jemiolo is attempting to hold the company liable because it employs the medical staff. However, there is no general *respondeat superior* liability under 42 U.S.C. § 1983. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001); *see also Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008) ("[A] private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights."). Because Jemiolo's complaint against Wexford appears to be based only on Wexford's medical staff's poor decisions in connection with his care, Wexford will be dismissed as a defendant.

For these reasons, the court:

(1) GRANTS Joseph E. Jemiolo leave to proceed against Head of Medical Lynn Fry in her individual capacity for compensatory and punitive damages for deliberate indifference to his pain when denying him the use of a wheelchair during transport to medical visits outside the facility, in violation of the Eighth Amendment;

(2) GRANTS Joseph E. Jemiolo leave to proceed against Head of Medical Lynn Fry and Superintendent Hyatt in their official capacities for injunctive relief to address Jemiolo's pain during transport to medical visits outside the facility in a manner that complies with the Eighth Amendment;

(3) GRANTS Joseph E. Jemiolo leave to proceed against RN Jenifer Auston, RN Vernia Fanning, Regional Direction Leann Ivers, Head of Medical Lynn Fry, DON Bobby, CO Houston, CO Renow, and Lieutenant Kinnager in their individual capacities for compensatory and punitive damages for being deliberately indifferent to his serious medical needs when he returned to the Miami Correctional Facility with injuries on April 14, 2018, in violation of the Eighth Amendment;

(4) GRANTS Joseph E. Jemiolo leave to proceed against RN Vernia Fanning, Dr. Marandet, and Head of Medical Lynn Fry in their individual capacities for compensatory and punitive damages for deliberate indifference to Jemiolo's pain when reducing his pain medication following his injuries on April 14, 2018;

(4) DISMISSES all other claims pursuant to 28 U.S.C. § 1915A;

(5) DISMISSES Commissioner Robert E. Carter, State of Indiana, and Wexford Medical pursuant to 28 U.S.C. § 1915A;

(6) DIRECTS the clerk and the United States Marshals Service to issue and serve process on Superintendent Hyatt, Dr. Marandet, RN Jenifer Auston, RN Vernia Fanning, Regional Director Leann Ivers, Head of Medical Lynn Fry, DON Bobby, CO Houston, CO Renow, and Lieutenant Kinnager at the Indiana Department of Correction with a copy of this order and the complaint (ECF 1) as required by 28 U.S.C. § 1915(d);

(7) ORDERS Superintendent Hyatt to file an affidavit or declaration with the court by **January 10, 2018**, explaining how Joseph E. Jemiolo's pain is being addressed while being transported to and from outside doctor's appointment in a manner that complies with the Eighth Amendment's requirements; and

(8) ORDERS, pursuant to 42 U.S.C. §1997e(g)(2), that Superintendent Hyatt, Dr. Marandet, RN Jenifer Auston, RN Vernia Fanning, Regional Director Leann Ivers, Head of Medical Lynn Fry, DON Bobby, CO Houston, CO Renow, and Lieutenant Kinnager respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on December 27, 2018

/s/ JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT